# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| SIMON FIRE EQUIPMENT & REPAIR, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TOWN OF CLOVERDALE, INDIANA, <br><br> Defendant. | No. C05-1051-LRR <br><br> **ORDER** |

_____

## TABLE OF CONTENTS

*I.    INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.   FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.  PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*IV.   ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    *A.    Motion to Dismiss for Lack of Personal Jurisdiction* . . . . . . . . . . . 5

        *1.    Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        *2.    Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    *B.    Alternative Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*V.    CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

Before the court is Defendant Town of Cloverdale, Indiana's Motion to Dismiss or, Alternatively, to Transfer Venue ("Motion") (docket no. 3). Because the court concludes it does not have personal jurisdiction over the Town of Cloverdale, Indiana, the court shall dismiss the instant lawsuit without prejudice.

## II. FACTUAL BACKGROUND

Plaintiff Simon Fire Equipment & Repair, Inc. ("Simon Fire") is an Iowa corporation with its principal place of business in Farley, Iowa. Defendant Town of Cloverdale, Indiana ("Cloverdale") is an Indiana municipal corporation located in Putnam County, Indiana.[1] The amount in controversy exceeds $75,000, exclusive of interest and costs.

On April 25, 2005, Cloverdale announced it was accepting bids for the purchase of a fire truck. Cloverdale published a public notice in the *Greencastle Banner-Graphic,* a small local paper of general circulation, in compliance with Indiana law. *See* Ind. Code §§ 5-3-1, 5-17-1 (2005). The notice stated that prospective bidders could pick up the specifications for the fire truck and bidding information at the Cloverdale Town Hall during normal business hours. Sealed bids needed to be received by noon on May 10, 2005.

Dale Bush, one of Simon Fire's agents, went to the Cloverdale Town Hall and picked up a bid packet on behalf of Simon Fire. Bush is a resident of Spencer, Indiana, a town located approximately fifteen miles away from Cloverdale. Bush sent the bid packet to Jim Simon, President of Simon Fire, in Farley, Iowa.

Simon prepared the bid documents on behalf of Simon Fire. Simon Fire submitted

---

[1] Cloverdale is located approximately forty miles southwest of Indianapolis and has a population around 2200 people.

its bid to Cloverdale in a timely fashion and included a certified bid check for $25,000. Simon Fire's bid documents stated that it is located in Farley, Iowa. In its bid, Simon Fire offered to sell Cloverdale a 2001 Spartan Simon Demo fire truck for $229,990.63. Simon Fire had already built the truck but offered to undertake any further assembly to meet Cloverdale's specifications.

On May 10, 2005, Cloverdale opened the bids. On June 8, 2005, the Cloverdale Town Council held a special meeting and accepted Simon Fire's bid "subject to favorable financing."

Cloverdale discussed financing options with its financial advisor, O.W. Krohn & Associates, LLP ("K&A"). K&A is located in Westfield, Indiana. K&A told Cloverdale that favorable financing was available.

On July 5, 2005, John Davis, President of the Cloverdale Town Council, sent a letter to Bush indicating that Cloverdale had accepted the bid "subject to favorable financing." Davis informed Bush that Cloverdale was "working with Rural Development for financing and steps have been taken to move this action along." Davis stated he "anticipate[d] a quick response from Rural Development and their steps necessary in this process so we might finalize this transaction."

On July 19, 2005, the Cloverdale Town Council held a special session to vote on Ordinance #2005-3, which provided for the issuance of bonds to cover the cost of the fire truck. A divided Town Council voted against the ordinance. Three councilmen—Donald Sublett, Dennis Padgett and Glen Vickroy—voted against the ordinance.[2] Davis, as well

---

[2] According to minutes of the meeting, Vickroy and Sublett believed Cloverdale did not need the fire truck. Padgett stated "he never understood the whole subject so that's why he voted no."

3

as Judy Whitaker, voted in favor of financing the purchase of the fire truck.[3]

At some unknown point in time after July 5, 2005, Sublett called Simon via telephone and told him Cloverdale was not going to buy the fire truck.

On August 18, 2005, an United States Department of Agriculture Rural Development Area Specialist in Bloomfield, Indiana wrote Cloverdale. The Specialist "advise[d] [Cloverdale] that Rural Development funds for [Cloverdale's] fire truck project have been obligated . . . ." Rural Development offered to give Cloverdale a $37,500 grant and finance a loan for $213,000 at 4.125% per annum interest for twenty years.

On December 20, 2005, in the midst of the instant litigation, Sublett, Padgett and Vickroy wrote a letter to Simon Fire. The three councilmen stated:

> The Town Council of Cloverdale, Indiana approved a motion on December 13, 2005 to return the $25,000 bid check to Simon and Company.
>
> Mr. Simon, the council truly regrets this long delay and we can only apologize for this action. This is Christmas—the time for hope, love and peace. We sincerely wish you and family the best of the Holidays and success for 2006.

Davis and Whitaker did not sign the letter.

### III. PRIOR PROCEEDINGS

On October 27, 2005, Simon Fire filed a Petition at Law against Cloverdale in the Iowa District Court In and For Dubuque County. Simon Fire alleged Cloverdale breached a contract. Simon Fire sought compensatory damages, costs and interest. On December 7, 2005, Cloverdale removed the lawsuit to this court.

On December 12, 2005, Cloverdale filed the instant Motion. On December 29,

---

[3] Whitaker moved for reconsideration and informed the council that "the Town will be liable," but her motion did not carry.

2005, Simon Fire filed a Resistance. On January 5, 2006, Cloverdale filed a Reply.

Neither party requests oral argument. The court finds the Motion is fully submitted and oral argument is not necessary. Thus, the court turns to consider the Motion.

## IV. ANALYSIS

In its Motion, Cloverdale argues that this case should not be tried in the Northern District of Iowa. First, Cloverdale maintains it has insufficient contacts with Iowa to justify this court's exercise of personal jurisdiction over it. Second, Cloverdale alternatively asks the court to dismiss the case pursuant to the common law doctrine of *forum non conveniens*. Third, Cloverdale requests the court transfer this case to the United States District Court for the Southern District of Indiana in the interest of justice.

### A. *Motion to Dismiss for Lack of Personal Jurisdiction*

Cloverdale contends the court's exercise of personal jurisdiction over it would not comport with due process. Thus, Cloverdale asks the court to dismiss United Fire's lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(2).

#### 1. *Legal Standards*

"A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 790 (8th Cir. 2005) (citing *Dakota Indus. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). Iowa's long-arm statute extends personal jurisdiction over non-residents to the fullest extent permissible under the Due Process Clause. *See* Iowa R. Civ. P. 1.306; *see also Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (recognizing same); *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (same)*; Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 899 (Iowa Ct. App. 2002) ("Under Iowa Rule of Civil Procedure 1.306, Iowa's jurisdiction reaches to the widest due process parameters of the federal constitution.").

5

Therefore, the court only needs to examine whether the exercise of personal jurisdiction comports with due process. *Hicklin*, 959 F.2d at 739.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). "To satisfy due process a defendant must have sufficient minimum contacts with the forum state." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004). The contacts with the forum state must be more than "random," "fortuitous" or "attenuated." *Burger King,* 471 U.S. at 475; *accord Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984) (requiring contacts to be more than "random," "isolated" or "fortuitous"). "[T]he Defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 295, 297 (1980). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).[4]

---

[4] The Supreme Court has distinguished between two types of personal jurisdiction: specific jurisdiction and general jurisdiction. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn.8-9 (1984). Specific jurisdiction refers to jurisdiction over causes of action "arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8. On the other hand, "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State . . . exercise[s] 'general jurisdiction' over the defendant." *Id.* at 414 n.9. When general personal jurisdiction is asserted, the non-resident defendant must be engaged in "continuous and systematic" contacts within the forum state. *Id.* at 416.

After establishing that a defendant purposefully established such minimum contacts with the forum state, a court must still consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320); *see also Ferrell*, 393 F.3d at 790-91 (applying same two-step analysis); *Dakota Indus. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389-90 (8th Cir. 1991) (same). The Supreme Court has stated courts may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

Based upon Supreme Court precedents, the Eighth Circuit Court of Appeals instructs courts to consider five factors in assessing whether the court may lawfully exercise personal jurisdiction over a defendant. *Land-O-Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir. 1983). Those factors are:

> (1) the nature and quality of [the defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614 (8th Cir. 1998); *see, e.g., Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004) (reiterating same five factors and instructing courts to consider them), *cert. denied*, 125 S. Ct. 1304 (2005). The first three factors are the most important. *Dakota Indus.*, 946 F.2d at 1390; *accord Dever*, 380 F.3d at 1074 ("Significant weight is given to the first three factors.").

The factors must not be applied mechanically; they are not a "slide rule by which fundamental fairness can be ascertained with mathematical precision." *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987). Few answers to jurisdictional questions "will be written in black and white." *Burger King*, 471 U.S. at 486 n.29 (internal quotation omitted).

Simon Fire, the party seeking to establish jurisdiction, bears the burden to prove it exists. *Romak*, 384 F.3d at 983-84. At this stage in the proceedings, Simon Fire need not prove by a preponderance of the evidence that the court may exercise personal jurisdiction over Cloverdale. *Id.* at 983. To defeat Cloverdale's Motion, Simon Fire need only make a *prima facie* showing of jurisdiction. *Id*. Simon Fire may use affidavits, exhibits or other evidence to meet its burden. *Id*. The court must view the evidence in the light most favorable to the nonmoving party, Simon Fire. *Id*.

With these principles in mind, the court examines whether it may exercise personal jurisdiction over Cloverdale.

## *2. Analysis*

The court agrees with Cloverdale that this court does not have personal jurisdiction over Cloverdale. Cloverdale has insufficient contacts with Iowa and the court's exercise of jurisdiction over Cloverdale would not comport with fair play and substantial justice.

Cloverdale's contacts with Iowa are minimal. Cloverdale is a small Indiana town with no contacts with Iowa outside of the instant action. The undisputed evidence in the record shows(1) Cloverdale has no offices in Iowa; (2) Cloverdale has no lock boxes, bank accounts or brokerage accounts in Iowa; (3) Cloverdale does not own or lease any real estate in Iowa; (4) none of Cloverdales' officers, employees or agents reside or work in Iowa; (5) Cloverdale has never recruited or hired any employee or agent in Iowa; (6) Cloverdale has never advertised, purposely sought out or solicited business in Iowa, either

8

in this case or any other; (7) no employee or agent of Cloverdale has visited Iowa for official purposes; and (8) Cloverdale has never directly conducted business with any Iowa-based company other than Simon Fire in its over 150 years of existence. All of the foregoing facts weigh against the exercise of jurisdiction. *See, e.g., First Nat. Bank of Lewisville, Ark. v. First Nat. Bank of Clinton, Ky.*, 258 F.3d 727, 729-30 (8th Cir. 2001) (holding jurisdiction was lacking over defendant where defendant maintained no office or place of business in the forum state, was not registered to do business in the forum state, did not solicit customers or accounts from the forum state, and had no bank accounts or property in the forum state); *Jarvis & Sons, Inc. v. Freeport Shipbuilding & Marine Repair, Inc.*, 966 F.2d 1247, 1250 (8th Cir. 1992) (recognizing that a defendant had no offices, agents, representatives or employees in forum state and none of defendant's employees had ever visited the forum state in connection with the contract weighed against the exercise of jurisdiction); *cf. Dever v. Hentzen Coating, Inc.*, 380 F.3d 1070, 1075 (8th Cir. 2004) (finding the exercise of jurisdiction was proper where an out-of-state defendant employed workers, owned and leased property and designated an agent for service of process in the forum state).

The court recognizes Cloverdale may not avoid jurisdiction simply because none of its employees, agents or representatives ever physically entered Iowa. *Burger King*, 471 U.S. at 476; *see also id.* at 478 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."). To determine whether the defendant purposely established minimum contacts with the forum when a contract is involved, the court must consider the circumstances of the contract, including the "prior negotiations," "contemplated future consequences," "the terms of the contract" and "the parties' actual course of dealing."

9

*Id.* at 479; *accord St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 591 (8th Cir. 2001) (directing district courts to consider the same four factors in contract cases). In the present case, all of these factors weigh against the exercise of jurisdiction, as nearly everything took place or was contemplated to take place in Indiana. For example, (1) the public notice was published in Indiana in a local newspaper; (2) Simon Fire's agent, a resident of Indiana, picked up the bid documents in Indiana; (3) Simon Fire's bid was received in Indiana; (4) the bid was opened in Indiana; (5) the heart of the dispute in this case—the inconsistent actions of the members of the Cloverdale Town Council—occurred in Indiana; (6) all efforts at obtaining financing for the truck and related decisions occurred in Indiana; and (7) the fire truck was to be delivered to Indiana for its use there.

In response, Simon Fire points out(1) Cloverdale knew Simon Fire was an Iowa resident when it received Simon Fire's bid documents; (2) the fire truck was built in Iowa; and (3) Cloverdale's representatives made a phone call and sent a letter to Iowa.[5] Standing alone, these contacts are insufficient to justify the exercise of personal jurisdiction over Cloverdale in Iowa. *See, e.g., First Nat. Bank of Lewisville, Ark.*, 258 F.3d at 729-30 (holding exercise of jurisdiction improper where party's only contacts with the forum state were issuing a cashier's check jointly payable to two residents of the forum state and a telephone communication with a resident of the forum state); *see also id.* ("The telephone calls add nothing to the quality of these contacts."); *Sybartic, Inc. v. Interport Intern., Inc.*, 957 F.2d 522, 524-25 (8th Cir. 1992) (holding defendant's agent's one trip, occasional telephone and mail communications to forum state were too few to justify

---

[5] The parties assume the letter is relevant contact, and so the court assumes the same. The court notes, however, the letter was written after the instant lawsuit was filed. *See Clune v. Alimak AB*, 233 F.3d 538, 544 n.8 (8th Cir. 2000) ("[M]inimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.")

exercise of jurisdiction); *cf. St. Jude Med.*, 250 F.3d at 592-93 (holding exercise of jurisdiction was proper where defendant initiated contact with resident of forum state, called and wrote resident to obtain an agreement and there was "evidence of a long-term, ongoing business relationship and numerous attempts" by defendant to develop future business with the plaintiff). The mere fact a defendant enters into a contract with a resident of the forum state is not in itself sufficient to satisfy due process. *Burger King*, 471 U.S. at 478. The Supreme Court has noted that "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum . . . clearly . . . it cannot." *Id.* (emphasis in original). It cannot fairly be said that Cloverdale has "purposefully avail[ed] itself of the privilege of conducting activities within [Iowa], thus invoking the benefits and protections of its laws." *Cf. St. Jude*, 250 F.3d at 591-92 (recognizing that an out-of-state corporation "pursued a business relationship" with Minnesota plaintiff was a factor weighing in favor of finding jurisdiction).

The court also finds that the assertion of personal jurisdiction would not comport with fair play and substantial justice. While it is true Iowa has an interest in providing a forum for Simon Fire, one of its residents, this interest is outweighed by the inconvenience of trying this case in Iowa. Judicial economy is better served by trying this case in Indiana. Most of the relevant parties, witnesses and key documents are in Indiana. Although litigation in Indiana will inconvenience Simon Fire insofar as Jim Simon will have to travel to Indiana, litigation in Iowa would cause much greater inconvenience to Cloverdale given the involvement of the entire town council in the bidding process and subsequent decision not to purchase the fire truck. As Cloverdale's Clerk-Treasurer testified, litigating this case in Iowa would disrupt Cloverdale's ability to conduct its operations.

For the foregoing reasons, the court concludes that Simon Fire has not made a *prima facie* showing of personal jurisdiction. The court finds that Cloverdale could not reasonably have expected to be haled into an Iowa court. The parties' prior negotiations and actual course of dealing, as well as the terms and contemplated future consequences of the contract, bear out this assertion. *See Burger King*, 471 U.S. at 479. Moreover, the court's assertion of jurisdiction would offend notions of "fair play and substantial justice." *Dakota Indus.*, 946 F.2d at 1389. Therefore, the court shall dismiss this case without prejudice. *See Mo. Soybean Ass'n v. EPA*, 289 F.3d 509, 513 (8th Cir. 2002) ("Dismissal for lack of jurisdiction is not an adjudication of the merits, thus the case must be dismissed without prejudice" and "is not a bar to a later suit" in the proper forum); *see also* Fed. R. Civ. P. 41(b) (dismissals based upon lack of jurisdiction are not an adjudication on the merits).

### B. Alternative Arguments

In light of the court's decision to dismiss this case without prejudice, Cloverdale's alternative arguments for dismissal or for transfer to the United States District Court for the Southern District of Indiana are moot.

### V. CONCLUSION

In the light of the foregoing, **IT IS HEREBY ORDERED** that:

(1) Defendant Town of Cloverdale, Indiana's Motion to Dismiss or, Alternatively, to Transfer Venue (docket no. 3) is **GRANTED** and

(2) This action is **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

**DATED** this 20th day of January, 2005.

                                        LINDA R. READE
                                        JUDGE, U. S. DISTRICT COURT
                                        NORTHERN DISTRICT OF IOWA